## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

SABRINA MCCALL, Individually and as Independent Administrator of the
Estate of ASHANTI MCCALL, Deceased,

        Plaintiff,

   VS.

UNITED STATES OF AMERICA,

        Defendant.

**No.**

**Jury demand**

### COMPLAINT AT LAW

NOW COMES Plaintiff, SABRINA MCCALL, individually and as Independent Administrator of the Estate of ASHANTI MCCALL, deceased, by and through her attorneys, POWER ROGERS & SMITH, LLP, complaining of Defendant UNITED STATES OF AMERICA pleading hypothetically and in the alternative, states as follows:

### JURISDICTION AND VENUE

1. The PLAINTIFF is SABRINA MCCALL, both individually and as the Independent Administrator of the Estate of ASHANTI MCCALL, deceased. SABRINA MCCALL is the natural mother of the deceased, ASHANTI MCCALL. At all pertinent times herein, SABRINA MCCALL was a resident of the State of Illinois and the County of Cook and lived within the Northern District of Illinois (District).

2. The acts of negligence alleged in this Complaint all took place within the District.

3. At all times relevant to this complaint, GILLIAN STEVENS-EASTMAN, M.D., SILVA LARA, A.P.N., LEILA HAGSHENSA, M.D., and ASHISH ANSAL, M.D., were employed by Defendant at MILE SQUARE HEALTH CENTER, a Federally Qualified Healthcare Center, as physicians and as an advanced practice nurse within this District.

Furthermore, Defendant is responsible for the negligent acts or omissions of its agents or employees under respondeat superior. Thus, Jurisdiction is conferred upon this Court pursuant to the Federal Tort Claims Act (FTCA) 28 U.S.C. § 1346(b)(1), § 1402(b), § 2679(d)(2), and § 1367(a).

## FACTS COMMON TO ALL COUNTS

1. On June 14, 2016, and at all times material, Mile Square Health Center operated as a federally funded health care center at multiple locations all located within the County of Cook, State of Illinois.

2. On June 14, 2016, and at all times material, Mile Square provided health care services to the general public that included, but was not limited to, internal medicine.

3. On June 14, 2016, and at all times material, MILE SQUARE operated at locations that included, but were not limited to, 4747-51 W. Cermak Road, Cicero, Illinois 60804, and 1220 S. Wood St., Chicago, Illinois 60608.

4. On June 14, 2016, and at all times material, Defendant employed a staff of health care professionals at Mile Square, including, but not limited to physicians, advanced practice nurses and other medical practitioners.

5. At all times material, the staff of health care professionals including, but not limited to physicians, advanced practice nurses and other medical practitioners working at Mile Square were the employees and/or agents of the Defendant United States of America.

6. On June 14, 2016, and at all times material, Defendant permitted its staff of health care professionals to manage the care of its patients, including, but not limited to, internal medicine.

7. On June 14, 2016, and at all times material, medical records of its' patients, including but not limited to patient medical records from University of Illinois Medical Center at Chicago were available for review by Defendant and its staff of health care professionals.

8. On June 14, 2016, and at all times material, medical records of its' patients, including but not limited to patient medical records from University of Illinois Medical Center at Chicago were accessible for review by Defendant and its staff of health care professionals.

9. On June 14, 2016, and at all times material, medical records of its' patients, including but not limited to patient medical records from University of Illinois Medical Center at Chicago were stored within the same electronic medical record as those created by MILE SQUARE's staff of health care professionals.

10. On June 14, 2016, and at all times material, medical records of its' patients, including but not limited to patient medical records from University of Illinois Medical Center at Chicago were a part of the same electronic medical record as those created by MILE SQUARE's staff of health care professionals.

11. On or about July 20, 2011, ASHANTI MCCALL was referred to the University of Illinois Medical Center At Chicago for a Pediatric Neurology Consultation.

12. On or about July 20, 2011, it was documented that "in March 2011" ASHANTI MCCALL "started having episodes of 'tensing up' for a few seconds then becomes limp that she falls down and feels exhausted and looks pale afterwards such that she sleeps for hours."

13. On or about July 20, 2011, it was documented that ASHANTI MCCALL "feels lightheaded prior to the episodes" and that she had experienced approximately "5-7" episodes "since March."

14. On or about July 20, 2011, it was documented that ASHANTI MCCALL's father and paternal cousin are both epileptic and experience "petit mal" seizures.

15. On June 14, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. was physician with a license to practice internal medicine in the State of Illinois.

16. On June 14, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. was involved in the care and treatment of ASHANTI MCCALL.

17. On June 14, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. had a duty to possess and apply the knowledge and exercise the care and skill of a reasonably well-qualified health care provider under the same or similar circumstances.

18. On June 14, 2016, ASHANTI MCCALL presented herself to MILE SQUARE for yeast infection, knee pain and depression.

19. On June 14, 2016, it was documented that ASHANTI MCCALL presented herself to MILE SQUARE for yeast infection, knee pain and depression.

20. On June 14, 2016, and at all times material, ASHANTI MCCALL had a personal history of having seizures.

21. On June 14, 2016, and at all times material, ASHANTI MCCALL had a family history of seizures.

22. On June 14, 2016, and at all times material, ASHANTI MCCALL was evaluated, assessed and treated by GILLIAN STEVENS-EASTMAN, M.D.

23. On June 14, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. knew or, in the exercise of reasonable care, should have known that ASHANTI MCCALL had a prior history of seizures episodes.

24. On June 14, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. knew or should have known that ASHANTI MCCALL had a family history of seizures and epilepsy.

25. On June 14, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. knew or should have known that ASHANTI MCCALL was not on any seizure medication.

26. On June 14, 2016, and at all times material, ASHANTI MCCALL was prescribed Wellbutrin, a.k.a Bupropion, 150mg daily at the direction and instruction of GILLIAN STEVENS-EASTMAN, M.D.

27. On September 30, 2016, and at all times material, ASHANTI MCCALL presented at Mile Square for treatment of a rash.

28. On September 30, 2016, and at all times material, ASHANTI MCCALL was evaluated, assessed and treated by GILLIAN STEVENS-EASTMAN, M.D.

29. On September 30, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. increased ASHANTI MCCALL's Wellbutrin prescription to 300mg daily.

30. On June 14, 2016 and September 30, 2016, GILLIAN STEVENS-EASTMAN, M.D. failed to document that ASHANTI MCCALL had a family history of seizures.

31. On June 14, 2016 and September 30, 2016, Mile Square failed to document that ASHANTI MCCALL had a family history of seizures.

32. On November 26, 2016, and at all times material, ASHANTI MCCALL vomited and was found unconscious and/or semi-conscious in the living room of their family home.

33. On November 26, 2016, and at all times material, ASHANTI MCCALL presented to Roseland Hospital with complaints of seizure, syncope, abdominal pain, nausea, and vomiting.

34. On November 26, 2016, and at all times material, Roseland Hospital diagnosed ASHANTI MCCALL with an ovarian cyst rupture and vasovagal episode.

35. On November 26, 2016, and at all times material, Roseland Hospital prescribed ASHANTI MCCALL Tylenol and Codeine.

36. Upon information and belief, on November 26, 2016, and at all times material, Roseland Hospital ordered ASHANTI MCCALL to reduce the dosage of Wellbutrin from 300 to 75mg daily.

37. On November 26, 2016, and at all times material, ASHANTI MCCALL was discharged from Roseland Hospital.

38. On November 27, 2016, ASHANTI MCCALL presented to Advocate Christ Medical Center ("CENTER") for persistent abdominal and right upper quadrant pain.

39. On November 27, 2016, ASHANTI MCCALL presented to Advocate Christ Medical Center ("CENTER") with complaints of seizure and syncopal episode.

40. On November 27, 2016, and at all times material, while at CENTER, it was noted in ASHANTI MCCALL's medical records that she had a history of seizures.

41. On November 27, 2016, and at all times material, while at CENTER, it was noted in ASHANTI MCCALL's medical records that she experienced a seizure three weeks prior.

42. On November 27, 2016, and at all times material, while at CENTER, it was noted in ASHANTI MCCALL's medical records that she was not on any seizure medications.

43. On November 27, 2016 and/or November 28, 2016, and at all times material, ASHANTI MCCALL was diagnosed with a right flank pain and a ruptured ovarian cyst.

44. On November 27, 2016 and/or November 28, 2016, and at all times material, while at CENTER, ASHANTI MCCALL's AST was elevated to 429.

45. On November 28, 2016, and at all times material, ASHANTI MCCALL was discharged from CENTER.

46. On November 28, 2016, and at all times material, ASHANTI MCCALL's discharge prescription was for Ibuprofen 600mg every 6 hours as needed.

47. On November 28, 2016, and at all times material, ASHANTI MCCALL presented herself

to MILES SQUARE.

48. On November 28, 2016, and at all times material, ASHANTI MCCALL was evaluated, assessed and treated by GILLIAN STEVENS-EASTMAN, M.D.

49. On November 28, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. knew ASHANTI MCCALL had a history of seizures.

50. On November 28, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. documented that ASHANTI MCCALL had a history of seizures.

51. On November 28, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. knew ASHANTI MCCALL had a family history of seizures.

52. On November 28, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. documented that ASHANTI MCCALL had a family history of seizures.

53. On November 28, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. knew ASHANTI MCCALL was not taking any seizure medication.

54. On November 28, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. documented that ASHANTI MCCALL was not taking any seizure medication.

55. On November 28, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. knew ASHANTI MCCALL's liver enzymes were elevated.

56. On November 28, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. documented that ASHANTI MCCALL's liver enzymes were elevated.

57. On November 28, 2016, and at all times material, GILLIAN STEVENS-EASTMAN, M.D. instructed ASHANTI MCCALL to continue to take Wellbutrin 300mg daily.

58. At all times material, Codeine carried the risk of lowering ASHANTI MCCALL's seizure threshold and/or causing ASHANTI MCCALL to have seizures.

59. At all times material, ASHANTI MCCALL's elevated liver function altered the metabolism of the Codeine, resulting in greater effect on the seizure threshold.

60. At all times material, Tylenol with codeine and Ibuprofen had the potential to increase liver toxicity, which altered the metabolism of Codeine and resulted in greater effect on the seizure threshold.

61. At all times material, Wellbutrin is known to lower a patient's seizure threshold.

62. At all times material, Wellbutrin is known to induce seizures.

63. At all times material, Wellbutrin is contraindicated in patients who have a history of seizures.

64. At all times material, Wellbutrin is contraindicated in patients who have a family history of seizures.

65. At all times material, Wellbutrin carried the risk of lowering ASHANTI MCCALL's seizure threshold and/or causing ASHANTI MCCALL to have seizures.

66. At all times material, ASHANTI MCCALL's elevated liver function altered the metabolism of the Buproprion, resulting in greater effect on the seizure threshold.

67. At all times material, Tylenol with codeine and Ibuprofen had the potential to increase liver toxicity, which altered the metabolism of Buproprion and resulted in greater effect on the seizure threshold.

68. At all times material, Wellbutrin carried the risk of lowering ASHANTI MCCALL's seizure threshold and/or causing ASHANTI MCCALL to have seizures.

69. At all times material, ASHANTI MCCALL's elevated liver function altered the metabolism of the Wellbutrin, resulting in greater effect on the seizure threshold.

70. At all times material, Tylenol with codeine and Ibuprofen had the potential to increase liver toxicity, which altered the metabolism of Wellbutrin and resulted in greater effect on the seizure threshold.

71. On June 14, 2016, and at all times material, LEILA HAGSHENAS, M.D. was physician with a license to practice internal medicine in the State of Illinois.

72. On June 14, 2016, and at all times material, LEILA HAGSHENAS, M.D. was involved in the care and treatment of ASHANTI MCCALL.

73. On June 14, 2016, and at all times material, LEILA HAGSHENAS, M.D. had a duty to possess and apply the knowledge and exercise the care and skill of a reasonably well-qualified health care provider under the same or similar circumstances.

74. On June 14, 2016, and at all times material, ASHANTI MCCALL was evaluated, assessed and treated by LEILA HAGSHENAS, M.D.

75. On June 14, 2016, and at all times material, LEILA HAGSHENAS, M.D. knew or, in the exercise of reasonable care, should have known that ASHANTI MCCALL had a prior history of seizures episodes.

76. On June 14, 2016, and at all times material, LEILA HAGSHENAS, M.D. knew or should have known that ASHANTI MCCALL had a family history of seizures and epilepsy.

77. On June 14, 2016, and at all times material, LEILA HAGSHENAS, M.D. knew or should have known that ASHANTI MCCALL was not on any seizure medication.

78. On June 14, 2016, and at all times material, ASHANTI MCCALL was prescribed Wellbutrin, a.k.a Bupropion, 150mg daily at the direction and instruction of LEILA HAGSHENAS, M.D.

79. On September 30, 2016, and at all times material, ASHANTI MCCALL was evaluated, assessed and treated by LEILA HAGSHENAS, M.D.

80. On September 30, 2016, and at all times material, LEILA HAGSHENAS, M.D. increased ASHANTI MCCALL's Wellbutrin prescription to 300mg daily.

81. On June 14, 2016 and September 30, 2016, LEILA HAGSHENAS, M.D. failed to document that ASHANTI MCCALL had a family history of seizures.

82. On June 14, 2016 and September 30, 2016, LEILA HAGSHENAS, M.D. failed to document that ASHANTI MCCALL had a family history of seizures.

83. On November 28, 2016, and at all times material, ASHANTI MCCALL was evaluated, assessed and treated LEILA HAGSHENAS, M.D.

84. On November 28, 2016, and at all times material, LEILA HAGSHENAS, M.D. knew ASHANTI MCCALL had a history of seizures.

85. On November 28, 2016, and at all times material, LEILA HAGSHENAS, M.D. documented that ASHANTI MCCALL had a history of seizures.

86. On November 28, 2016, and at all times material, LEILA HAGSHENAS, M.D. knew ASHANTI MCCALL had a family history of seizures.

87. On November 28, 2016, and at all times material, LEILA HAGSHENAS, M.D. documented that ASHANTI MCCALL had a family history of seizures.

88. On November 28, 2016, and at all times material, LEILA HAGSHENAS, M.D. knew ASHANTI MCCALL was not taking any seizure medication.

89. On November 28, 2016, and at all times material, LEILA HAGSHENAS, M.D. documented that ASHANTI MCCALL was not taking any seizure medication.

90. On November 28, 2016, and at all times material, LEILA HAGSHENAS, M.D. knew ASHANTI MCCALL's liver enzymes were elevated.

91. On November 28, 2016, and at all times material, LEILA HAGSHENAS, M.D. documented that ASHANTI MCCALL's liver enzymes were elevated.

92. On November 28, 2016, and at all times material, LEILA HAGSHENAS, M.D. instructed ASHANTI MCCALL to continue to take Wellbutrin 300mg daily.

93. On June 14, 2016, and at all times material, ASHISH ANSAL, M.D. was physician with a license to practice internal medicine in the State of Illinois.

94. On June 14, 2016, and at all times material, ASHISH ANSAL, M.D. was involved in the care and treatment of ASHANTI MCCALL.

95. On June 14, 2016, and at all times material, ASHISH ANSAL, M.D. had a duty to possess and apply the knowledge and exercise the care and skill of a reasonably well-qualified health care provider under the same or similar circumstances.

96. On June 14, 2016, and at all times material, ASHANTI MCCALL was evaluated, assessed and treated by ASHISH ANSAL, M.D.

97. On June 14, 2016, and at all times material, ASHISH ANSAL, M.D. knew or, in the exercise of reasonable care, should have known that ASHANTI MCCALL had a prior history of seizures episodes.

98. On June 14, 2016, and at all times material, ASHISH ANSAL, M.D. knew or should have known that ASHANTI MCCALL had a family history of seizures and epilepsy.

99. On June 14, 2016, and at all times material, ASHISH ANSAL, M.D. knew or should have known that ASHANTI MCCALL was not on any seizure medication.

100. On June 14, 2016, and at all times material, ASHANTI MCCALL was prescribed Wellbutrin, a.k.a Bupropion, 150mg daily at the direction and instruction of ASHISH ANSAL, M.D.

101. On September 30, 2016, and at all times material, ASHANTI MCCALL was evaluated, assessed and treated by ASHISH ANSAL, M.D.

102. On September 30, 2016, and at all times material, ASHISH ANSAL, M.D. increased ASHANTI MCCALL's Wellbutrin prescription to 300mg daily.

103. On June 14, 2016 and September 30, 2016, ASHISH ANSAL, M.D. failed to document that ASHANTI MCCALL had a family history of seizures.

104. On June 14, 2016 and September 30, 2016, ASHISH ANSAL, M.D. failed to document that ASHANTI MCCALL had a family history of seizures.

105. On November 28, 2016, and at all times material, ASHANTI MCCALL was evaluated, assessed and treated by ASHISH ANSAL, M.D.

106. On November 28, 2016, and at all times material, ASHISH ANSAL, M.D. knew ASHANTI MCCALL had a history of seizures.

107. On November 28, 2016, and at all times material, ASHISH ANSAL, M.D. documented that ASHANTI MCCALL had a history of seizures.

108. On November 28, 2016, and at all times material, ASHISH ANSAL, M.D. knew ASHANTI MCCALL had a family history of seizures.

109. On November 28, 2016, and at all times material, ASHISH ANSAL, M.D. documented that ASHANTI MCCALL had a family history of seizures.

110. On November 28, 2016, and at all times material, ASHISH ANSAL, M.D. knew ASHANTI MCCALL was not taking any seizure medication.

111. On November 28, 2016, and at all times material, ASHISH ANSAL, M.D. documented that ASHANTI MCCALL was not taking any seizure medication.

112. On November 28, 2016, and at all times material, ASHISH ANSAL, M.D. knew ASHANTI MCCALL's liver enzymes were elevated.

113. On November 28, 2016, and at all times material, ASHISH ANSAL, M.D. documented that ASHANTI MCCALL's liver enzymes were elevated.

114.   On November 28, 2016, and at all times material, ASHISH ANSAL, M.D. instructed ASHANTI MCCALL to continue to take Wellbutrin 300mg daily.

115.   On June 14, 2016, and at all times material, SILVIA LARA, A.P.N. was advanced nurse practitioner with a license to practice medicine in the State of Illinois.

116.   On June 14, 2016, and at all times material, SILVIA LARA, A.P.N. was involved in the care and treatment of ASHANTI MCCALL.

117.   On June 14, 2016, and at all times material, SILVIA LARA, A.P.N. had a duty to possess and apply the knowledge and exercise the care and skill of a reasonably well-qualified health care provider under the same or similar circumstances.

118.   On June 14, 2016, and at all times material, SILVIA LARA, A.P.N. knew or, in the exercise of reasonable care, should have known that ASHANTI MCCALL had a prior history of seizures episodes.

119.   On June 14, 2016, and at all times material, SILVIA LARA, A.P.N. knew or should have known that ASHANTI MCCALL had a family history of seizures and epilepsy.

120.   On June 14, 2016, and at all times material, SILVIA LARA, A.P.N. knew or should have known that ASHANTI MCCALL was not on any seizure medication.

121.   On June 14, 2016, and at all times material, ASHANTI MCCALL was prescribed Wellbutrin, a.k.a Bupropion, 150mg daily at the direction and instruction of SILVIA LARA, A.P.N.

122.   On September 30, 2016, and at all times material, ASHANTI MCCALL presented at Mile Square for treatment of a rash.

123.   On September 30, 2016, and at all times material, ASHANTI MCCALL was evaluated, assessed and treated by SILVIA LARA, A.P.N.

124. On September 30, 2016, and at all times material, SILVIA LARA, A.P.N. increased ASHANTI MCCALL's Wellbutrin prescription to 300mg daily.

125. On June 14, 2016 and September 30, 2016, SILVIA LARA, A.P.N. failed to document that ASHANTI MCCALL had a family history of seizures.

126. On June 14, 2016 and September 30, 2016, SILVIA LARA, A.P.N. failed to document that ASHANTI MCCALL had a family history of seizures.

127. On November 28, 2016, and at all times material, ASHANTI MCCALL was evaluated, assessed and treated by SILVIA LARA, A.P.N.

128. On November 28, 2016, and at all times material, SILVIA LARA, A.P.N. knew ASHANTI MCCALL had a history of seizures.

129. On November 28, 2016, and at all times material, SILVIA LARA, A.P.N. documented that ASHANTI MCCALL had a history of seizures.

130. On November 28, 2016, and at all times material, SILVIA LARA, A.P.N. knew ASHANTI MCCALL had a family history of seizures.

131. On November 28, 2016, and at all times material, SILVIA LARA, A.P.N. documented that ASHANTI MCCALL had a family history of seizures.

132. On November 28, 2016, and at all times material, SILVIA LARA, A.P.N. knew ASHANTI MCCALL was not taking any seizure medication.

133. On November 28, 2016, and at all times material, SILVIA LARA, A.P.N. documented that ASHANTI MCCALL was not taking any seizure medication.

134. On November 28, 2016, and at all times material, SILVIA LARA, A.P.N. knew ASHANTI MCCALL's liver enzymes were elevated.

135. On November 28, 2016, and at all times material, SILVIA LARA, A.P.N. documented that ASHANTI MCCALL's liver enzymes were elevated.

136.     On November 28, 2016, and at all times material, SILVIA LARA, A.P.N. instructed ASHANTI MCCALL to continue to take Wellbutrin 300mg daily.

## COUNT I
### (WRONGFUL DEATH)

137.     Plaintiff hereby adopts, incorporates and re-alleges paragraphs 1-136 of facts common to all counts as if fully set forth as paragraphs 1-136 of Count I.

138.     On or about June 14, 2016, and at all times relevant, Dr. Gillian Stevens-Eastman was acting within the course and scope of her employment relationship with Defendant United States of America.

139.     On or about September 30, 2016, and at all times relevant, Dr. Gillian Stevens-Eastman was acting within the course and scope of her employment relationship with Defendant United States of America.

140.     On or about November 28, 2016, and at all times relevant, Dr. Gillian Stevens-Eastman was acting within the course and scope of her employment relationship with Defendant United States of America.

141.     On or about June 14, 2016, and at all times relevant, Dr. ASHISH ANSAL was acting within the course and scope of her employment relationship with Defendant United States of America.

142.     On or about September 30, 2016, and at all times relevant, Dr. ASHISH ANSAL was acting within the course and scope of her employment relationship with Defendant United States of America.

143.     On or about November 28, 2016, and at all times relevant, Dr. ASHISH ANSAL was acting within the course and scope of her employment relationship with Defendant United States of America.

144. On or about June 14, 2016, and at all times relevant, Dr. LEILA HAGSHENAS was acting within the course and scope of her employment relationship with Defendant United States of America.

145. On or about September 30, 2016, and at all times relevant, Dr. LEILA HAGSHENAS was acting within the course and scope of her employment relationship with Defendant United States of America.

146. On or about November 28, 2016, and at all times relevant, Dr. LEILA HAGSHENAS was acting within the course and scope of her employment relationship with Defendant United States of America.

147. On or about June 14, 2016, and at all times relevant, SILVIA LARA, A.P.N. was acting within the course and scope of her employment relationship with Defendant United States of America.

148. On or about September 30, 2016, and at all times relevant, SILVIA LARA, A.P.N. was acting within the course and scope of her employment relationship with Defendant United States of America.

149. On or about November 28, 2016, and at all times relevant, SILVIA LARA, A.P.N. was acting within the course and scope of her employment relationship with Defendant United States of America.

150. On or about June 14, September 30 and November 28, and at all other times material, Defendant United States of America, by and through the acts and/or omissions of its employees and/or agents including but not limited to LARA, HAGSHENAS, STEVENS-EASTMAN, and ANSAL was negligent and deviated from the standard of care and treatment of ASHANTI MCCALL in one or more of the following respects:

151. Prescribed ASHANTI MCCALL medication despite being contraindicated given her history of seizures;

152. Prescribed ASHANTI MCCALL medication despite being contraindicated given her family history of seizures;

153. Misunderstood and/or ignored ASHANTI MCCALL's seizure disorder;

154. Failed to refer ASHANTI MCCALL to a Neurologist;

155. Failed to prescribe medication to control ASHANTI MCCALL's seizures;

156. Failed to conduct additional testing or monitoring of ASHANTI MCCALL's seizures and/or seizure disorder;

157. Continued to prescribe medication that increased ASHANTI MCCALL's risk of having a seizure;

158. Focused ASHANTI MCCALL's care on conditions unrelated and of lesser consequence than her seizure disorder; or

159. Was otherwise negligent and deviated from the standard of care.

160. On December 7, 2016, ASHANTI MCCALL died as a proximate result of an uncontrolled seizure disorder.

161. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Defendant United States of America, by and through the acts and/or omissions of its employees and/or agents including but not limited to LARA, HAGSHENAS, STEVENS-EASTMAN, and ANSAL Plaintiff's decedent, ASHANTI MCCALL, sustained injuries that resulted in her death.

162. As a direct and proximate result of one or more of the foregoing conditions, the survivors of ASHANTI MCCALL have sustained substantial pecuniary loss, including the

loss of her society, companionship, services, and support, and expenses for funeral and burial.

163.    At the time of her death, the Decedent, ASHANTI MCCALL, left surviving her mother, SABRINA MCCALL; her father, James Barnes; and her brother, Jaden Dupaty.

164.    Plaintiff brings this action under the Illinois Wrongful Death Act, 740 ILCS 180/1 and 2.

165.    Pursuant to the Illinois Code of Civil Procedure Section 2/622, the affidavit of the attorney for the Plaintiff is attached hereto as Exhibit A.

166.    The damages sought in this cause of action exceed the jurisdictional limits of the Circuit Court of Cook County's Law Division. See Exhibit B, Affidavit from Plaintiff's counsel regarding damages sought in this cause of action.

WHEREFORE, Plaintiff SABRINA MCCALL, as Independent Administrator of the Estate of ASHANTI MCCALL, deceased, demands judgment against Defendant United States of America, by and through the acts and/or omissions of its employees and/or agents including but not limited to LARA, HAGSHENAS, STEVENS-EASTMAN, and ANSAL in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00) which shall represent fair and just compensation.

## COUNT VIII
### (SURVIVAL)

153.    Plaintiff restates and re-alleges paragraphs 1-136 of facts common to all counts and paragraphs 137-152 Count I as if fully stated herein.

154.    As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Defendant United States of America, by and through the acts and/or omissions of its employees and/or agents including but not limited to LARA,

HAGSHENAS, STEVENS-EASTMAN, and ANSAL Plaintiff's decedent, ASHANTI

MCCALL, sustained injuries that resulted in her death.

155.    As a direct and proximate result of one or more of the foregoing conditions,

ASHANTI MCCALL sustained substantial personal and pecuniary loss, including the loss

of normal life, emotional distress, pain and suffering.

156.    Plaintiff brings this action under the Survival Act, 755 ILCS 5/27-6.

157.    Pursuant to the Illinois Code of Civil Procedure Section 2/622, the affidavit of the

attorney for the Plaintiff is attached hereto as Exhibit A.

158.    The damages sought in this cause of action exceed the jurisdictional limits of the

Circuit Court of Cook County's Law Division. See Exhibit B, Affidavit from Plaintiff's

counsel regarding damages sought in this cause of action.

WHEREFORE, Plaintiff SABRINA MCCALL, as Independent Administrator of the Estate

of ASHANTI MCCALL, deceased, demands judgment against Defendant United States of America,

by and through the acts and/or omissions of its employees and/or agents including but not limited to

LARA, HAGSHENAS, STEVENS-EASTMAN, and ANSAL in an amount in excess of FIFTY

THOUSAND DOLLARS ($50,000.00) which shall represent fair and just compensation.

Respectfully Submitted,

POWER ROGERS & SMITH, LLP

By:  s/ Joseph A. Power, Jr.
          Attorney for Plaintiffs

Joseph A. Power, Jr.
James Power
POWER, ROGERS & SMITH, LLP
70 West Madison Street, 55th Floor
Chicago, IL 60602-4212
Phone: (312) 236-9381
Fax: (312) 236-0920

STATEMENT OF MERIT

I,                                     am a Board Certified emergency medicine physician who is actively practicing. I have practiced emergency medicine continuously for decades on a full-time basis. I am familiar with the standards of care that relates to the care and treatment of patients presenting to emergency departments and clinics, like Ashanti McCall, including the diagnosis and treatment of seizure disorders, with and without concomitant illness, as well as vasovagal reactions. I am familiar with the assessments, re-examination and evaluation of patients in the emergency department as a physician responsible for patients in the emergency department whether the assessment, examination or evaluation is performed by a physician, a resident, mid-level provider or a nurse, from my education, training and experience. I have reviewed the medical records from Ashanti McCall's EMS interaction 11/26/2016, Roseland Community Hospital the same day, Little Company of Mary 11/27, Advocate Christ 11/27, and University of Illinois 11/28. My opinions herein are to a reasonable degree of medical certainty, however, they are subject to change upon review of anticipated depositions and other discovery materials in this matter.

On November 26, 2016 the Chicago EMS was summoned to 23 year old Ms. McCalls' home for fainting and vomiting. She was found lying on her stomach on the floor, awake and oriented x 3, albeit lethargic. She was transported to Roseland Community Hospital where to complaints were documented as nausea and vomiting with abdominal pain that started earlier in the morning. They were aware that Ashanti "passed out while vomiting." They further document a past history of depression, only. Her vital signs were normal. Blood tests and urine were essentially negative, although her normal white blood count (WBC) was a bit left-shifted. A CT scan of the brain and abdomen were also undertaken and normal, except the abdominal CT revealed a right ovarian cyst and mild pelvic fluid, "likely ruptured cyst." There were incidental GU findings as well. This study was followed by an ultrasound which added no information to the CT abdomen. Ashanti was discharged with the following diagnoses: 1. Ovarian cyst rupture and 2. Vasovagal episode (simple fainting).

Ashanti and her mother went to the Little Company of Mary ED on 11/27 and in triage was noted to be seen at Roseland the prior day, had a ruptured ovarian cyst and "possibly swollen kidneys." Apparently they were in the waiting room for almost 3 hours, were not seen by a physician and left.

They presented at Advocate Christ Hospital on the same day (11/27), presumably after leaving Little Company of Mary. Here it was noted that she has a past medical history of seizures and was presenting with back pain. The doctor documents that they were advised by the mother that Ashanti had a "30 minute syncopal episode yesterday." They were further aware of the ED visit that day and the CT and ultrasound findings. They also note that Ashanti was called by Roseland to return there for a repeat ultrasound. She did have some thoracic back pain on exam, her WBC was elevated, but unshifted. She also had an isolated single liver function test (AST). They do note that



she was found <u>unconscious</u> by her mother that first day, had been having multiple episodes of vomiting and not tolerating oral intake. The Gynecology service was consulted for her ovarian cyst. They document that they were advised by the mother that Ashanti "never had lower abdominal pain, but has been having right flank pain." She was eventually discharged to follow-up with her doctors.

The patient and her mother presented to a follow-up clinic at University of Illinois on 11/28 and were seen by a Nurse Practitioner, apparently seen earlier that day by a gynecologist for her "ruptured ovarian cyst." They further document that she went to Roseland Community Hospital 11/26 and "was found unconscious due to seizure. Reports seizures from 5-17 yrs old. Then seizures subsided for a few years and restarted at 19 yrs old, per mom seizures are trauma induced and stress induced. Endorses that she gets at least one seizure per-month. Not taking anything for seizures. No precipitating factors. Dad has epilepsy. Last time saw a neurologist was 7 yrs ago. Had a CT scan of brain at Roseland- neg findings." She was diagnosed with 1. Elevated liver enzymes and 2. Seizure disorder. The Plan was to have liver tests rechecked in 3 days and a neurology consult was ordered, apparently for some time in the future and she was discharged home. There is no evidence that she was given aftercare instructions or medications specific for seizures.

A clinic note from 10/4/2016 at University of Illinois for follow-up of depression and obesity notes that she was taking Welbutrin, a medication known to cause seizures and to lower the seizure threshold.

After reviewing the above and rendering my opinions regarding the sub-standard care, I was advised that Ashanti died as a result of complication of an uncontrolled seizure disorder.

Inexplicably and below the standard of care, Ashanti's obvious seizure disorder was either negligently misunderstood and/or ignored by four different institutions and by a myriad of affiliated healthcare providers. Multiple opportunities for intervention were negligently missed while her care was mis-focused on a gynecological and/or gastrointestinal condition of unrelated and lesser consequence and her seizure disorder ignored. Intervention would have likely prevented her demise.

There is a meritorious case against Advocate Christ Hospital and University of Illinois for the acts and/or omissions of its emergency room, clinics, and clinical staff.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

SABRINA MCCALL, Individually and as Independent Administrator of the
Estate of ASHANTI MCCALL, Deceased,

                              Plaintiff,
      VS.

UNITED STATES OF AMERICA,

                              Defendants.

**No.**

**Jury demand**

### AFFIDAVIT

        NOW comes Affiant, JAMES I. POWER and being first duly sworn on oath, deposes and states:

1.      That he is one of the attorneys representing plaintiff in the above cause of action.

2.      That he is familiar with the facts in the above cause.

3.      That he has reviewed the available information to the money damages in the above matter.

4.      That based upon information and belief, the total money damages sought in the above cause are worth in excess of Fifty Thousand Dollars ($50,000.00).

                                        _____
                                      James I. Power

Subscribed and sworn to before me
this ___7th___ day of _December_ 20 18

_Krystin Case_
Notary Public

                       OFFICIAL SEAL
                   KRYSTIN L CASE-OBERMEIER
               NOTARY PUBLIC - STATE OF ILLINOIS
              MY COMMISSION EXPIRES:07/31/22

Joseph A. Power, Jr.
James I. Power
POWER ROGERS & SMITH, LLP #31444
70 W. Madison Street, Suite 5500
Chicago, IL 60602
312-236-9381
joepower@prslaw.com
jamespower@prslaw.com

